The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Our first case for argument today is 2019-2350 Moorcraft v. United States. Mr. Trombetta, please proceed. Thank you. Good morning, justices. I have a little bit of a speech impediment, so it slows me down a little bit. I think with respect to the raises that Ms. Moorcraft and Ms. Melendez are seeking in addition to other people, they were going into, you know, they were going into getting annual raises. And they kept being told, no, no, no, no. Okay. And, you know, other places in the location, like Boston, and, you know, Providence is Providence, you know, they didn't jive. And I understand that maybe perhaps the, you know, the amounts may not jive. But what happened, though, is there was an offset. And this is after the proceeding below. What happened was, they went ahead and I think, I think, I know, that they increased the prices, or the prices, the compensation by about $6,000 to $9,000 in that one year. They didn't do anything as to the other years. So the question becomes, well, you know, why not? And what we've found, based on, you know, the limited information that we have, is that, first of all, we thought, well, we believe that the people in the office for Providence are being dishonest. And secondly... Excuse me, counsel. Yes. When you say they're being dishonest, are you saying that there was no mechanism followed with respect to that pay raise that involved OPM at all? Well, I'd have to say, no, because they, well, I'd like to say that what they did do is, they kept saying, there's no need to do it. We're not obligated to do it. And, you know, my clients were constantly, you know, going, saying, we want an increase. We do not understand why we're not getting an increase. And then... Counselor, this is Judge Rayner. So do you dispute that neither OPM or the VA secretary, that they've formally identified a recruitment or a retention problem with respect to the nurses in the hyenas community? I guess I would say yes. And the reason I say yes is because there was, I think, a shortage of, I think, three out of five. Yeah, three out of five. And the people there... Three out of five what? Excuse me? Three out of five what? Oh, of the... I'm sorry. It's the VA... Is it this? LPMs. So they would have five, and they're supposed to have, I mean, they had two, and they were supposed to have two more. I understand that they did get another one. Okay, but the question I asked you is whether OPM or the VA secretary, whether they formally, have they identified a recruitment problem in the area? Well, they should have because if, you know... They have not, correct? Correct. But that's wrong because I think the people who were in the, if you want to say, on the case, you know, you'd have to say that they were under the gun. I mean, they were not getting paid what they deserve to be paid. And that's why... Counsel, this is Judge O'Malley. You know, there's, when you say what they deserve to be paid, I certainly can't disagree that there's probably no nurse in this country or LPN that's getting what they deserve. But the question is, what are they, what is the government obligated to pay them? And there is, there are very specific requirements that have to precede any pay increase, correct? Well, I would have to say, you know, respectfully, no to that. And the reason is because right north of it is Boston. And Boston gives raises every single year. And, you know, why, you know, there'll be some raises for Providence, but why are they getting the benefit of this review? And if you look at, you know, Providence's, what do you want to say, if you want to look at their performance during the 10 years, there's nothing. There's nothing in the file which will say, hey, it should be up, it should be down. It's nothing. And is there anything, counsel, this is Judge O'Malley again, is there anything in the special rates statute or in Title 38, Chapter 74, that actually requires VA facilities to conduct local market surveys? Well, I think yes, because I think everybody else does it. Well, can you give me a sentence or a phrase that's in either one of those provisions? Your Honor, I don't have that in front of me. So, but, you know, what I'm trying to say is, you know, let's just say that the, you know, what the VA is doing is wrong. Okay. Even the high end of the VA, it's wrong. Okay. So, what are we supposed to do? I mean, it seems to me that the only thing you can do is somehow raise the rates. Otherwise, there's nothing you can do. I think that's clear, at least for Providence, because, you know, I understand you're in, well, I don't want to really say, oh, you're in Washington. But I don't understand how these people in Providence could get away with this by essentially lying, because there is no, excuse me, there is no basis for them to go ahead and say, oh, yeah, we did this, we did that, when you didn't do anything. And you can look right north, and you can say, hey, look at Boston, they're doing it all the time. So, the question is, it doesn't seem fair to me. That's how I see it. And, you know, I could, I have to find the, whatever it is, you know, the handbook or whatever it is, which shows that that's the way it goes. And I just don't think that, you know, that doing it Providence's way is even close to being that. And how do we explain, how do we explain Boston and other places? So, that's why, you know, we're just looking for it to be even. And we don't think it has been. And as evidence of that, we have the, you know, right after there was a decision in this case, okay? I think a few months later, they raised the case, or the compensation, by I think it was $6,000 to $9,000. So, I don't get that either. Like, why didn't they do it beforehand? Because they wanted to get rid of this case. And somebody probably made a mistake with the case by allowing this to go forward. So, that's how I see it, Your Honor. Okay. Thank you, counsel. We should hear now from the government. Ms. Torres. Thank you, Your Honor. May it please the court. The trial court's judgment should be affirmed in all respects. First, the trial court correctly dismissed appellant's amended complaint for failure to state a claim for unpaid wages under the special rates statute. Second, the trial court correctly dismissed appellant's amended complaint for failure to state a claim for overtime under the Fair Labor Standards Act. Third, the trial court correctly held that it did not possess jurisdiction to hear appellant's fraud and misrepresentation claims. And finally, appellants have waived their back pay act claim. Beginning with appellant's special rate claim, the trial court correctly held that appellants failed to establish that they were entitled to a special rate. Relying on the statute and regulations, the trial court correctly concluded that appellants failed to show that either OPM or the VA found that there was a retention or recruitment issue at the Hyannis facility warranting a special rate. When they did the new raise, did they follow all of these procedures that you're saying were required? Yes, Your Honor. And just to make it clear, this statute was designed to help the Veterans Administration effectuate its mission of healthcare to Veterans. And it essentially provides what the VA handbook calls a management tool so that local facilities can, if facing retention or recruitment problems, meet those problems by increasing the rate of special, the special rate. The special rate statute wasn't enacted to basically serve as a benefit for workers. Rather, as I said, it was enacted to ensure that the VA could handle any significant retention and recruitment problems related to its mission. Pointing to the regulations, no one factor or combination of factors requires the government to establish a special rate. And that's set forth expressly in the regulations at 5 CFR 530.306C. And the government can terminate a special rate after establishing it if it determines that it's no longer needed, Your Honor. And that's set forth expressly at 5 CFR 530.307E. Appellants contend that somehow there's been some wrongdoing on the their 2018 congressional letter, congressional request to Congressman Keating. The VA has determined now, 20 months later, that there's a need to address recruitment and retention problems. There's no basis for a conclusion that somehow the government has not followed the situation prevailing within the Providence VA Medical Center. And that is, Your Honor, the parent VA Medical Center that determined that covers a number of duty stations, four duty stations, including Hyannis. So what is prevailing within the Providence VA Medical Center as the parent entity is what drives whether or not there's a need for a special rate. In 2018, there was no need. And that is what was reported to the VA in response to congressional delegations. Fast forward 20 months, presently, there was an issue as of the summer of 2019, which ultimately led to the special rate that was established in November 2019. And that was based on concerns because there were requests or threats that LPNs, for example, were moving on to other positions. And based upon those concerns with potential loss of LPNs, the Providence VA Medical Center determined that it was necessary to establish a special rate. Appellants continue to rely upon the fact that Boston has instituted a special rate, but it's undisputed, Your Honor, that the Hyannis facility is one of four community-based outpatient clinics that's discussed in appellants' amended class action complaint on page 14 of the supplemental appendix. Their appellants recognize that the Providence VA Medical Center is the parent facility and that there are only four duty stations under that VA Medical Center, including Hyannis. Thus, the Providence VA Medical Center and the Boston VA Medical Center are not equivalent for purposes of establishing pay. The regulations that were promulgated under the statute provide further support. As defined by the reg, pay schedules are determined by an employee's official work site, which is also referred to in the definitions in the regulation as an official duty station. And that's in 5 CFR 530.302, the definitions. The regulations also provide that whether an employee is covered by a special rate is based on the geographic location of the official work site. And that's at 5 CFR 530.303 set B. Another regulation, 5 CFR 531.605, covers determining an employee's official work site. And that, again, is determined by the location of the employee's position of record where the employee regularly performs his or her duties. And this official work site... So, counsel, I guess I'm trying, I mean, I guess I'm now understanding why there was some belief that these nurses were being lied to or technicians were being lied to. I mean, so you say that all of this has to be done, but in this particular raise that actually went through it, it wasn't done. No, no, no, Your Honor. Of course, no, I am saying consideration of the local facility and its needs was done, Your Honor. That is the basis for the VA to establish a special rate. The VA Medical Center determined that they were facing a potential loss of LPN. So, that was done. That was the basis for the determination in November 2019 to establish a special rate. My citation to the regs only points out that this is a local facility level determination. It doesn't have anything to do with other facilities. For example, the Boston labor market is not equivalent to the Providence Medical Central labor market. There are different needs, and the regulation requires that determinations be made at the facility level, i.e., Hyannis, and the other duty stations within the Providence parent VA Medical Center, not another VA medical parent entity, such as the Boston VA Medical Center. So, everything was done according to what the statutory and regulatory scheme require, which is that the facility consider whether it's losing LPNs, whether it faces potential loss of and that is what happened in November 2019. So, what is it that prompts an annual survey, if not the threats of the employees to quit? It just seems to me that maybe this was something like it would just drag on and drag on. The employees are held hostage to an agency that's not reacting when maybe it should. Your Honor, both the statute and the regulations leave it absolutely to the discretion of the government to determine whether or not a special rate is required. It is based upon... This is not a statute... But that discretion has to have some sort of reasonable basis to it. It just can't be at will. No, of course, Your Honor, and... There's a whole statutory scheme here. There's a statutory framework that I understand is designed to add institutional strength to the VA employment practices. But on the other hand, the employees fit within this statutory scheme and deserve a raise when certain things happen. But if those don't happen, then they never get a raise. Well, Your Honor, the statutory... The statute and the regulations do not provide that employees are entitled to any kind of raise. This is about me... No, I understand that. I understand that. And I understand that there has to be this annual survey. But I guess I'm asking you, what is it that kicks off the annual survey? No, Your Honor, there is no requirement that there be an annual survey. And that goes to the claim that OPM or the VA were required to do local labor market surveys. Neither the statute or the... There doesn't have to be an annual survey, but it is at the discretion, correct, to have an annual survey? Yes, the regulation provides that OPM may consider the following factors among which... Yeah, okay. But it's not required to do so. In fact, Your Honor, the regulations make it clear the OPM, the agency are not required... They're not required to depend or... They're not required to consider... Counselor, I understand that they're not required to conduct an annual survey. I understand that. I'm asking you, what is it that has to happen in order for, at the discretion of the agency, to conduct the annual survey? What is it that kicks that off? Well, in this situation, it's that the facility, the local level facility, Hyannis, for example, one of the duty stations under the Providence VA Medical Center, would have to hear employees, for example, threatening to quit. That is a key driver. Is that happening here? Well, that was... In 2019, while this appeal was pending, the VA determined that they were... The VA facility in Providence was hearing threats from LPNs that they were going to move on to other positions if they did not receive increased pay. So, based on those... And that is what the VA has to consider, whether they're facing significant recruitment and retention issues. And even then, the regulation makes it clear that, even then, nothing requires the government to institute a special rate. There's... How do you judge the difference, the degree or the magnitude of difference between the Boston locale and the Hyannis locale if you don't do an annual... If you don't... What the driver is, is whether your facility is facing problems with retaining or recruiting your LPNs in your facility. There is no need, under this statute or the regulations, to look elsewhere beyond the local facility, which, in this case, is Hyannis. Counsel, these... This is Judge Moore. These employees are not held hostage, right? They... And believe that, in the same market, they could get more money by going elsewhere. They could leave, couldn't they? Yes, Your Honor. Absolutely. They could go... And if they did leave in mass exodus because they really did have better opportunities elsewhere for more money, then that would certainly be one of those indicators that would trigger the need to re-evaluate the salary structure. Is that correct? That's absolutely correct, Your Honor. They could go... Okay, stop. So in the absence of any evidence that that's actually occurring, why in the world would the government just sort of gratuitously raise salaries? I mean, isn't salary really market and somewhat geographically driven? So wouldn't the government... In the absence of anyone leaving, in the absence of being able to find people, why would you just gratuitously raise salaries? One would not. The government would not. It is... If it's with the current staffing able to meet its mission, there is absolutely no requirement that they increase the special rate. It's not a benefit for the workers. It's not... So maybe... I mean, we don't know why, but maybe they have to pay more in Boston because it's a more expensive place to live in Hyannis, and they wouldn't be able to retain people there. Is that possibly true? Of course, Your Honor. And of course, it has many more hospitals than a duty stage than Providence. I mean, there are world-class hospitals, for example, in Boston that are both private and public sector. So it is an absolutely different labor market. And that is... And Your Honor is absolutely correct. The government isn't required to make a determination to increase the special rate if there is no need in that And of course, LPNs have options. If they want to go to Boston, they can do so. If they want to go to another facility in another city, they can do so. But there's no entitlement, there's no obligation that under this particular statute and its regulations, that the government simply listen to complaints by workers. Okay. Thank you, counsel. This case is taken under submission. Thank you, Your Honor.